# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **E.H.**

**No. 19-0761** (Greenbrier County 19-JA-25)

**FILED**
**April 28, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father T.H., by counsel Nicole D. Graybeal, appeals the Circuit Court of Greenbrier County's July 17, 2019, order terminating his parental rights to E.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Michael R. Whitt, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in relying on events that occurred after the issuance of the emergency order to justify the removal of the child and terminating petitioner's parental rights (1) when he was not afforded an improvement period, (2) without first employing a less-restrictive alternative, and (3) on the basis that he allowed the biological mother, whose parental rights had previously been terminated, to contact the child.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Specifically, petitioner argues that the circuit court violated his constitutional rights when it terminated his parental rights on the basis that he allowed continued contact between the mother and the child. However, petitioner's brief is inadequate as it lacks citation to the record or applicable law. Indeed, petitioner provides only one citation: "[The natural right of a parent to custody of his child] is a fundamental liberty protected and guaranteed by the due process clause. U.S.C.A. Const. Amends. 5, 14." Yet, this brief mention is not accompanied by any legal analysis. Petitioner's failure to provide any support for his argument is in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, as follows:

> The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must

(continued . . .)

1

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2017, the DHHR filed a prior child abuse and neglect petition against the parents alleging drug abuse and domestic violence in the presence of the child. Both parents stipulated to the allegations contained in the petition, and they were granted post-adjudicatory improvement periods. The mother continued to abuse drugs and did not successfully complete her improvement period, ultimately resulting in the termination of her parental rights to the child. Petitioner, however, successfully completed his improvement period, and the child was returned to his custody around November of 2018.

The DHHR filed the instant child abuse and neglect petition against petitioner in March of 2019. In the petition, the DHHR set forth an investigation conducted after having received a referral on January 23, 2019, only three months after the child had been returned to petitioner's custody. Specifically, the DHHR stated that it had received a referral that petitioner was using drugs in the presence of the child and that the child was dirty and smelled bad. On January 25, 2019, a Child Protective Services ("CPS") worker went to a school and interviewed petitioner's nephew, who also lived in the home. Petitioner's nephew described, in a very detailed manner, drug abuse by petitioner, petitioner's brother, and the grandmother. Following this interview, a CPS worker interviewed E.H., the only child at issue on appeal, who reported that petitioner allowed her to see her mother on a regular basis. The CPS worker contacted petitioner on March 6, 2019, to confront him with the children's disclosures. Petitioner denied any drug abuse or allowing E.H. to see her mother. Petitioner refused to sign an in-home safety plan at that time; however, two days later, petitioner signed the safety plan and agreed to in-home services. On March 14, 2019, a CPS worker went to petitioner's home to check on the child, but no one was home. That same day, a police officer spoke to petitioner's brother, who informed the officer that he had not seen petitioner or the child in a few days. Upon speaking with E.H.'s maternal grandmother, the CPS worker learned that petitioner, the mother, and the child had fled to "one of the Carolinas." Sergeant Steve Murphy of the West Virginia State Police began a missing person investigation regarding the child, and confirmed that petitioner, the mother, and the child had stayed in North Carolina for three nights. On March 15, 2019, the DHHR filed an application for ratification of emergency custody, indicating that the child was in danger due to petitioner's drug abuse, continued contact with the mother, and due to petitioner having fled the State with the child in violation of the safety plan. A magistrate court entered an order ratifying emergency custody of

---

contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Accordingly, we decline to address this assignment of error on appeal.

the child that same day. As of the petition's filing on March 19, 2019, the child was still considered a missing person. The order filing the petition found that imminent danger to the child existed and transferred custody of the child to the DHHR. The child was located and removed from petitioner's custody one day after the petition's filing.

The DHHR filed an amended petition in April of 2019, wherein it alleged that petitioner had been charged with child neglect creating risk of injury and conspiracy in regard to the manner in which the child had been located on March 20, 2019. Specifically, the child was found in a home with three loaded firearms and drug paraphernalia within her reach.

A preliminary hearing was held later in April of 2019. A CPS worker testified regarding the allegations contained in the petition and noted that the DHHR was concerned for the child's welfare because petitioner had signed the safety plan and stated that he would participate in services, but did not notify the DHHR or service providers of his whereabouts after he fled the State. The CPS worker also testified that she made petitioner's attorney aware that he could not move to another state with the child while an open case was pending. Sergeant Murphy testified that he received a call on March 15, 2019, regarding the missing child and described his investigation. Sergeant Murphy testified that he tracked petitioner, the mother, and the child to a motel in North Carolina, but stated they had checked out of the hotel prior to his discovery of their location. Sergeant Murphy testified that he eventually located petitioner, the mother, and the child at a residence in West Virginia on March 20, 2019. Sergeant Murphy noted that three loaded firearms were located in the home, as well as drug paraphernalia on the coffee tables and shelves, all of which were within the child's reach. Sergeant Murphy found the mother hiding the child in the bathroom. Petitioner's mother testified that she became aware that the police were looking for petitioner and the child around March 15, 2019, and that she informed petitioner of the situation that same day. The mother testified that petitioner responded that he had custody of the child and there was no reason for officers to be looking for the child.

Following this testimony, the circuit court found that the DHHR's removal of the child was proper and that the evidence presented demonstrated that the child was in imminent danger. Despite petitioner's counsel's request to not consider testimony regarding events that occurred after the March 15, 2019, petition for ratification of emergency custody, the circuit court determined "[t]hat [this] evidence is directly relevant to the situation and the [c]ourt must consider it in order to protect the child." The circuit court further found that petitioner

> had heard from two separate sources on the very day that he had either left for North Carolina, or no later than the 15th of March, that law enforcement was looking for him, and from one of those sources, indicated a change in custody had been effected by an emergency order of the Magistrate Court. It is not a safe situation for a child to be hidden and to live the life of a fugitive.

At an adjudicatory hearing held in May of 2019, the circuit court took judicial notice of the testimony presented at the preliminary hearing and admitted a report from the multidisciplinary team, DHHR summaries, and a Court Appointed Special Advocate report. After hearing argument, the circuit court adjudicated petitioner as an abusing parent, finding that the "manner, place, and

3

nature of the supervision provided by [petitioner] were negligent, [and] were threatening to the child."

In June of 2019, the circuit court held a dispositional hearing wherein petitioner requested an improvement period. Petitioner testified that he should have contacted the police regarding his whereabouts, kept the firearms in a secure location, and should not have allowed the child around the mother. Petitioner testified that he would be willing to address those issues through an improvement period and was confident that he could abide by any terms and conditions required of him. However, when asked whether the mother was under the influence of drugs while in the child's presence, petitioner responded "if I had to guess, yeah." Petitioner claimed that he thought the child was fine in the presence of her mother as long as petitioner was with her. Petitioner also denied knowledge of the drug paraphernalia found in the home in which he and the child were located. When asked whether he believed the child had been harmed "by what went on in this case," petitioner responded that he thought it was harmful for the child to see him be arrested.

The DHHR presented the testimony of a caseworker, who stated that petitioner had previously been provided parenting and adult life skills classes and visitation during his improvement period in the prior case. According to the caseworker, there were no other services that petitioner could benefit from. Ultimately, the circuit court found that petitioner had previously received extensive services, but failed to respond to such services and had not internalized basic concepts relative to the protection of the child. The circuit court further found that, following the dismissal of the prior proceedings, petitioner took a series of actions that placed the child at risk. The circuit court did not believe there were any additional services that could be provided to petitioner to help him remedy the conditions of abuse and neglect and, therefore, denied petitioner's motion for an improvement period. Based on the foregoing, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the child's welfare. It is from the July 17, 2019, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the

---

[3]The mother's parental rights were terminated in 2018. The child is placed in a foster home with a permanency plan of adoption therein.

evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in relying on events that occurred after the issuance of the order ratifying emergency custody to justify the removal of the child. Petitioner contends that the order granting emergency custody should not have been issued because the allegations of drug abuse in the presence of the child were never substantiated and because the child was not in imminent danger while she was in North Carolina. According to petitioner, these issues, which occurred prior to the issuance of the order granting emergency custody of the child to the DHHR, were insufficient to justify removal of the child. Moreover, petitioner avers that the circuit court erred in relying on the circumstances under which the child was located in the presence of firearms and drug paraphernalia to justify the removal because those events occurred after the order was issued. We find that petitioner is entitled to no relief in this regard.

Here, two sections of Chapter 49 of the West Virginia Code are applicable in considering the grant of emergency custody below. First, the DHHR filed an application for ratification of emergency custody on March 15, 2019. West Virginia § 49-4-303 provides that a DHHR worker "may take the child into his or her custody" prior to the filing of the petition when

(1) In the presence of a child protective service worker a child or children are in an emergency situation which constitutes an imminent danger to the physical well-being of the child or children, as that phrase is defined in section two hundred one, article one of this chapter; and

(2) The worker has probable cause to believe that the child or children will suffer additional child abuse or neglect or will be removed from the county before a petition can be filed and temporary custody can be ordered.

In its application, the DHHR listed petitioner's alleged drug abuse and fleeing the State with the child to support its request for emergency custody of the child. The magistrate court found that the circumstances presented constituted imminent danger to the child and ratified the DHHR's application for emergency custody. Second, the DHHR filed an amended child abuse and neglect petition on March 19, 2019, alleging that petitioner fled the State with the child after a safety plan had been initiated upon allegations of substance abuse in the child's presence. West Virginia Code § 49-4-602(a)(1) permits a circuit court to order a child into the DHHR's custody for not more than ten days if the court finds that the contents of the abuse and neglect petition demonstrate imminent danger and there are no reasonably available alternatives to removal. Here, following the DHHR's filing of the petition on March 19, 2019, the circuit court issued an order making findings, based on the contents of the petition, that "[t]here exists imminent danger to the physical well-being of the child . . . and there are no reasonable available alternatives to removal of the child from the home." As such, the circuit court essentially continued custody of the child with the DHHR. Then, after the filing of an amended petition adding allegations regarding the circumstances in which the child was located, the circuit court held a preliminary hearing in April of 2019. After hearing testimony describing petitioner's actions of signing the safety plan; fleeing

5

to North Carolina; and exposing the child to her mother, drug paraphernalia, and loaded guns, the circuit court found that "there is probable cause to believe that the child was in imminent danger at the time of the removal from the home and the filing of the petition" based upon testimony regarding petitioner's "concealment of the child from the [DHHR] and law enforcement, as well [as] his possession of firearms and drug paraphernalia while the child was with him."

Based on these facts, we find no error in the circuit court's finding of probable cause that there was imminent danger to the child in the order following the preliminary hearing. Upon our review, we find no procedural error in the manner the DHHR handled the case below. It is clear that at each stage of the proceedings up to the preliminary hearing, the DHHR was granted emergency custody based upon facts alleged at that time. Further, the requisite findings of imminent danger pursuant to West Virginia Code §§ 49-4-303 and 49-4-602 were made at the appropriate junctures in the proceedings. Although petitioner claims that the child was not in imminent danger while in North Carolina, the circuit court found that his concealment of the child from the DHHR and law enforcement officers constituted imminent danger to the child. Petitioner's fleeing out of State was the exact issue considered by the magistrate court in issuing the order ratifying emergency custody. Therefore, the circuit court properly found imminent danger existed at the time the emergency removal was ratified apart from any findings regarding the situation in which the child was found by Sergeant Murphy.

In any event, petitioner cites to no authority standing for the proposition that a circuit court is precluded from considering information that arises after the grant of emergency custody to the DHHR prior to the filing of a petition but before the preliminary hearing on subsequently filed petitions. To the extent petitioner contends that the circuit court erroneously relied on the fact that the child was found in the presence of drug paraphernalia and loaded guns to justify the magistrate's issuance of an order ratifying emergency custody, we find no error. It is clear that the DHHR properly filed a petition and an amended petition including allegations surrounding this incident. Thereafter, a preliminary hearing was held to make findings regarding both petitions, as well as the removal of the child. Based on the evidence presented, the circuit court made appropriate findings under West Virginia Code § 49-4-602. Accordingly, we find the circuit court did not err in considering the allegations contained in the second amended petition as they were to be considered at the preliminary hearing and could be used as a basis for continuing emergency custody of the child with the DHHR as of the time of the amended petition's filing.

Petitioner's next assignments of error relate to the termination of his parental rights and will be considered together. Petitioner alleges that the circuit court erred in terminating his parental rights without first granting him an improvement period. According to petitioner, there was clear and convincing evidence that he was likely to fully participate in an improvement period because he successfully completed an improvement period in the prior proceedings and testified during the proceedings below that he was willing to do whatever was necessary to regain custody of the child. Further, petitioner testified that he was unaware that the mother was not permitted to be around the child and did not intentionally allow the mother around the child, as they "ran into each other in a public setting on the original occasion." Petitioner also argues that the circuit court erred in denying him a less-restrictive alternative to the termination of his parental rights. We disagree.

6

We have previously held that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) (It is within the court's discretion to grant an improvement period within the applicable statutory requirements.").We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, petitioner failed to demonstrate that he was likely to fully participate in an improvement period. Only months prior to the initiation of the instant proceedings, petitioner participated in an improvement period that required his participation in parenting and adult life skills classes, supervised visitation, and inpatient substance abuse treatment. While petitioner successfully regained custody of his child, he reverted to his abusive and neglectful ways only three months later and allowed the child to have contact with the mother, who continued to abuse drugs. Petitioner maintained throughout the proceedings that the child was safe in the mother's presence as long as he was with her. While petitioner contends that he did not intentionally expose the child to the mother on the "original occasion," he fails to address why he continued to allow the mother around the child following that occasion, including when he and the mother fled to North Carolina with the child. Petitioner also denied knowledge of the drug paraphernalia in the room with the child and stated that the harm to his child was merely seeing him arrested. This Court has held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. at 217, 599 S.E.2d at 640). Based upon petitioner's failure to recognize how his actions constituted abuse and neglect despite months of extensive services less than a year prior to these proceedings, we find no error in the circuit court's denial of petitioner's request for an improvement period.

We likewise find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when "the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on his own or with help. Despite having participated in extensive

services in the prior proceeding, petitioner continued to allow the mother around the child even though she was abusing controlled substances—the issue for which her parental rights were terminated, in part, in 2018. In response to the DHHR's attempt to provide in-home safety services to petitioner, he and the mother took the child and fled to North Carolina. Even though petitioner learned that law enforcement was looking for the child, he refused to contact them or to return with the child. Rather, petitioner hid the child in a room with loaded firearms and drug paraphernalia, all within reach of the child. Throughout the proceedings, petitioner failed to acknowledge that he put the child in danger or that allowing the mother in the child's presence was harmful to her welfare. Petitioner claimed that the child was not harmed, except for seeing him arrested, and that he did not understand that allowing the mother in the child's presence was harmful, stating that if he "had the say-so of [the child], then [he] could keep [the child] safe." Ultimately, the circuit court found that there were no additional services that could be provided to petitioner that would help him remedy the conditions of abuse and neglect as he was unable to internalize basic concepts relating to the protection of the child. While petitioner argues that he should have been granted a less-restrictive alternative to termination of his parental rights, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4 (citing syl. pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). It is clear that petitioner refused to acknowledge the conditions of abuse and neglect despite having previously received services only a few short months prior to the initiation of the instant proceedings. The evidence supports the circuit court's findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Based on the foregoing, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 17, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 28, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison